Common Pleas Court of Hamilton County.

KEYSTONE PACKING CO. v. NORFOLK & WESTERN RAILWAY CO. ET AL.

Decided May 18, 1933.

*Oliver M. Dock,* for plaintiff.
*Ralph E. Clark,* for defendants.

ALFRED MACK, J.

In this cause plaintiff seeks to recover damages by reason of the freezng of two cars containing 150 barrels of imported cherries "in brine", shipped from New York by steamship to Norfolk, Virginia, and from Norfolk, Virginia, to Cincinnati over the railroads of defendants. It is alleged that the negligence of defendants was the failure to transport said cherries in cars "suitable for the purpose and with proper protection against freezing while in transit"; it being alleged that such articles were placed in an ordinary box car without any protection against freezing, as the result of which the cherries did freeze and were delivered in a frozen condition.

The answer of defendants, which is quite lengthy, set out various rules adopted by the carriers and approved by the Interstate Commerce Commission. In brief, the claim is that contrary to such rules there was no request that the railroads "give any special or protective service against cold to these shipments," nor was there any request for the handling of the same under any of the rules or regulations set out in the answer "authorizing any protective service," nor was there a request that the defendants "use a refrigerator or lined car."

The reply, briefly stated, denies that any of the provisions of the rules and regulations set forth in the answer were applicable to the shipments in question; states that neither the plaintiff nor the shipper had any control over the placing of the cherries on board cars at Norfolk, Virginia, and states that said cars were loaded solely by the agents and employees of defendants; further alleges that the shipments were placed on cars in December, 1929, the winter season of the year, and that it was a matter of common knowledge that temperatures below freezing point are likely to occur in such season; stated that it was not necessary to protect the shipments by placing same in refrigerated or heated cars, but that ordinary care required that the cherries be shipped in insulated cars to protect against frost. The reply alleges that the defendants were negligent in placing the shipments in ordinary box cars instead of insulated cars.

It is undisputed that cherries "in brine" is the technical name for fresh cherries put up in barrels in a solution of water and sulphur dioxide. The cherries in question were imported from Italy and on arrival in New York in bond were shipped in bond to Norfolk, Virginia, and were loaded by the employees of the Norfolk & Western Railway Co., into ordinary box cars "in bond," viz., the same being sealed until opened by the U. S. Customs authorities at destination. It is likewise undisputed that neither the shipper nor plaintiff, nor any agent of either, was at Norfolk, Virginia, nor gave any directions as to cars in which the barrels of cherries were to be shipped to Cincinnati.

It is undisputed that the shipments by boats reached

Norfolk on November 27-28, 1929, and left at 12:01 a. m. on November 28-29, and that at the time of such arrival the temperature at Norfolk was between 40 and 45 degrees. It is likewise undisputed that in the course of transit the temperature continued to fall below freezing point and that on arrival of the cars the cherries were found to be frozen.

At the suggestion of the agent of the Baltimore & Ohio R. R. Co. such frozen cherries were salvaged by plaintiff. In the course of such salvaging part of the cherries was lost and destroyed and was of no value. There was testimony showing a loss on the two shipments of $2885.55. On the trial the jury returned a verdict in favor of plaintiff for said amount.

In its instructions to the jury the court made the case turn upon the question of whether the defendants were negligent in putting the cherries in a box car, and whether ordinary care required that they should have been put into an insulated car. The jury was instructed that defendants were not insurers, but that they were required to exercise ordinary care in the transportation of freight, and that it was their duty to use ordinary care in providing suitable cars, viz., "cars, which under all the circumstances of the case, the weather and the ordinary conditions existing, are suitable to the transportation of this freight." The jury was instructed that if defendants exercised such degree of care, and that loss was occasioned by extraordinary and unexpected weather, defendants could not be held responsible. The jury was specifically instructed that the rules and regulations set out in the answer should not be considered by them, but that their determination should depend upon the question whether the defendants exercised proper care under the circumstances of the case.

It is now urged in support of the motion for a new trial that there was error in not submitting such regulations to the jury, and in not charging them that it was the duty of plaintiff to designate the "protective service" it required, viz., in not designating that the shipments should be placed in insulated cars.

In considering the motion for a new trial and the arguments made in support thereof the court has spent much

time in tracing the history of the adoption of the rules set up by defendants and their approval by the Interstate Commerce Commission. Such search by the court reveals that a hearing was had some time in 1919 by the Interstate Commerce Commission on the subject of "Perishable Freight Investigation," at which hearing the railroads were presented and several hundred of the largest shippers of the country were present through their representatives. As a result thereof an opinion was delivered by the commission through Eastman, Commissioner, which is found in Vol. 56 *Interstate Commerce Commission Reports, pages* 449 *to* 671 *inclusive*. In such opinion there is summarized the contentions of the shippers and the carriers and there is a statement of the character of regulations that would be approved by the Interstate Commerce Commission. It is only necessary to refer to two of such rules, viz. 35 and 80, found on pages 552 and 553 of said report.

By said rule 35, entitled "Ordering Cars," is was provided:

"(A) Orders for cars *desired for loading* must be filed, with reasonable advance notice, by shippers with the originating carrier's agent and must be given in writing (or if orally or by telephone must be confirmed in writing) and must specify the type of car (refrigerator, ventilator, box, etc.) and character of carrier's service desired (See rule 80).

Orders will be accepted for the placement of cars at any specified hour.

(B) Carriers not owning or operating special equipment such as brine tank refrigerator cars do not hold themselves out as being in readiness to supply such equipment."

By rule 80, entitled "Shipper's Instructions" it was provided:

"(A) On carload shipments, shipper must declare in writing in shipping orders and bills of lading, at loading station, whether or not the shipments are tendered for transportation under refrigeration, non-refrigeration, icing, ventilation; or under protective service against cold.

Except as provided in rules Nos. 105, 245, 250, 312, and 405, no detailed instructions from shippers will be accepted other than:

(1) "Under Refrigeration" (If salt desired shipper must specify percentage).

(2) "Under Standard Ventilation" (as specified in rule 85).

(3) "Keep All Ventilators and/or Hatches closed and plugs in to final Destination regardless of Weather." (See note.)

(4) "Keep All Ventilators and/or Hatches open and Plugs out to final Destination regardless of Weather." (See note).

(5) "Common car service; owner's risk of heat or cold."

(B) For protective service against cold, see Section 5.

(C) When shipping orders and bills of lading contain notation relating to Carriers' Protective Services against heat or cold, other than authorized above, carriers will refuse to accept shipments."

At page 554 of said report it is said:

"The effect of rule 35 in connection with rule 80 is to require the shipper not only to give the carrier reasonable advance notice in writing that a car is wanted, but also to specify at the same time the type of car and the kind of protective service, if any, that are desired. We have frequently ruled that a carrier is entitled to such notice of a demand for a car. It is also reasonable that the carrier should know the kind of service that will be required. Cars are often ordered for loading at isolated sidings or non-agency stations, in which case the waybilling must be done elsewhere. It may develop that the rule should be amplified to make possible other forms of instruction or to protect the shipper against the carrier's delay in furnishing the car desired; but such modifications may be made if experience warrants."

Said rules 35 and 80 were in force at the time of the shipments in question substantially in the language quoted, except that rule 35 required oral or telephone ordering of cars to be confirmed in writing by the shipper within seventy-two hours.

A consideration of the history of these rules and a careful reading thereof shows that there is a manifest distinction between "protective service" and "ordering cars." Protective service is the ordering of refrigeration, heat, etc., which according to other regulations approved by the Interstate Commerce Commission may be furnished either

NOTE.—Carriers will comply with such instructions at owner's risk for loss or damage by heat or cold not the result of negligence by carriers.

by the shipper or by the carrier, the rates necessarily being higher when same is furnished by the carrier. Obviously rule 80 is inapplicable to the shipments in question, because neither refrigeration nor heat was to be furnished.

As to rule 35 this court has italicized the words "desired for loading," because it is obvious that said rule is intended to be applicable where the shipper intends to load the freight and therefore orders the kind of cars he desires for such purpose to be placed for such loading. In the case at bar neither the shipper nor the plaintiff loaded the cars, or was present by any representative or agent at Norfolk, Va. The cars were selected solely by the employees of the initial rail carrier, The Norfolk & Western Railway Co.

Said rule 35 being inapplicable it followed that the common law duty devolved upon the carrier to select cars suitable for the carriage of the freight, considering the season of the year, etc.

In the opinion of the court the jury was properly instructed to determine the case as to whether the carrier performed such common law duty.

It is scarcely necessary to add that the adjudicated cases state the common law duty of the carrier to furnish suitable cars for transporting freight as is contained in the instructions of the court. The cases will be found collected in 4 Ruling Case Law, page 682, Sections 156 and 157. It is also scarcely necessary to add that if rule 35 is applicable to the shipments in question, there was ample authority for the Interstate Commerce Commission to approve and adopt such rule. The Act of Congress expressly provides for the adoption of rules and regulations with reference to furnishing safe and adequate car service and to the facilities for transportation and all other matters relating to and connected with the handling, transporting and delivery of property so as to secure the safe and prompt handling and delivery of such property.

It follows from the foregoing reasons that in the opinion of the court the instructions to the jury were proper and correctly stated the law governing the duty of the carriers in the instant case. Motion for new trial overruled.